# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN ALLEN,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>LYDIA HENSE, et al.,<br><br>　　　　　Defendants. | Case No. 1:08-cv-00917-DLB PC<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>ECF No. 44<br><br>CLERK OF THE COURT DIRECTED TO CLOSE ACTION |

## I.　**Background**

Plaintiff John Allen ("Plaintiff") is a prisoner in the custody of the California Department of Corrections and Rehabilitation ("CDCR"). Plaintiff is proceeding pro se and in forma pauperis in this civil action pursuant to 42 U.S.C. § 1983. This action is proceeding on Plaintiff's first amended complaint, filed March 17, 2010, against Defendants J. Lopez and M. Hicks for violation of the First and Eighth Amendments. On May 3, 2012, Defendants filed a motion for summary judgment. ECF No. 44. No opposition was filed. The matter is submitted pursuant to Local Rule 230(l).[1]

## II.　**Summary Judgment Standard**

Summary judgment is appropriate when it is demonstrated that there exists no genuine dispute as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Washington Mutual Inc. v. United States*, 636 F.3d 1207, 1216 (9th Cir. 2011).

---

[1] Plaintiff was notified of the requirements for opposing a motion for summary judgment on August 16, 2012, and was granted an amended opposition deadline of September 6, 2012. ECF No. 127; *see Woods v. Carey*, 684 F.3d 934, 935 (9th Cir. 2012) (requiring pro se prisoner plaintiffs be notified of the requirements for opposing a motion for summary judgment concurrently with the motion). Plaintiff did not file an amended opposition.

1

Under summary judgment practice, the moving party

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" *Id.* at 324. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Id.* at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." *Id.* at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine dispute as to any material fact actually does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Fed. R. Civ. P. 56(c); *Matsushita*, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Thrifty Oil Co. v. Bank of Am. Nat'l Trust & Sav. Ass'n*, 322 F.3d 1039, 1046 (9th Cir. 2002); *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, *Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006); *Wool v. Tandem Computers, Inc.*, 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv.*, 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita*, 475 U.S. at 587 (quoting former Rule 56(e) advisory committee's note on 1963 amendments).

In resolving a motion for summary judgment, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed, *Anderson*, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party, *Matsushita*, 475 U.S. at 587 (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam)).

Finally, to demonstrate a genuine dispute, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . .Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 586-87 (citations omitted).

### III.   Statement of Facts[2]

In September 2006, Plaintiff was incarcerated in Building 6 on Facility D at North Kern State Prison (NKSP). Hicks Decl. ¶ 1; Lopez Decl. ¶ 5; Pl. Dep. 12:6-8, attached as Ex. A to Esquivel Decl. Defendant Hicks was a housing officer in Building 6, and Defendant Lopez was a psych escort in the building. Hicks Decl. ¶ 1; Lopez Decl. ¶ 2. Building 6 was the administrative segregation unit (ASU) at NKSP. Hicks Decl. ¶ 2; Pl.'s Dep. 13:22-14:4.

In September 2006, ASU inmates were released for yard twice a day—at eight in the morning and at noon. Lopez Decl. ¶ 3. ASU regulations required that inmates be strip searched and handcuffed before being escorted to the yard. ASU inmates were generally searched and handcuffed through the food port of the cell door before the door was opened. Lopez Decl. ¶ 6. ASU inmates

---

[2]   All facts are considered undisputed, unless otherwise noted.

1   were fed in their cells. The housing officers served and distributed the inmates' meals in Building 6.
2   Sack lunches were served with breakfast. Hicks Decl. ¶ 2.  If an inmate had a special diet, such as a
3   diabetic or religious meal, the breakfast trays arrived at the housing unit separately and were already
4   prepared. The inmate's name, prison identification number, and housing-unit number were on the
5   special-diet trays and bag lunches. Hicks Decl. ¶ 4.  Usually, the main-kitchen staff delivered the
6   special-diet meals to the housing unit, and the housing officers simply distributed the meals to the
7   assigned inmates. The housing officers did not check, review, or approve the special meals. Hicks
8   Decl. ¶ 5.

9         Muslims had special diets because of their religious beliefs, and their meals were prepared by
10  the main-kitchen and delivered to the housing unit. Hicks Decl. ¶ 6. Plaintiff testified at his
11  deposition that on September 10, 2006, Defendant Hicks provided him with a regular breakfast and
12  sack lunch. Pl.'s Dep. 16:12-14, 24-25.  Plaintiff also testified that he informed Hicks that he
13  required a vegetarian meal because of his Islamic beliefs. Pl.'s Dep. 16:15-23.  Plaintiff admitted
14  that although Hicks "shrugged" off his comment, she did not refuse to give him food and that she
15  left the breakfast tray and sack lunch at his cell. Pl.'s Dep. 16:19-17:12. Plaintiff further admitted
16  that some of the food items in the sack lunch were individually wrapped, like the meat, cookies, and
17  chips. Pl.'s Dep. 17:13-14, 25:1-13.

18        Plaintiff complained that Defendant Hicks's purported actions denied him the right to eat, but
19  he did not state or show how it affected or burdened his religious rights. Pl.'s Dep. 20:8-16.  Plaintiff
20  received his vegetarian dinner around 4 p.m. on September 10, 2006.  Pl.'s Dep. 26:17-22.
21  Defendant Hicks never denied or refused to give Plaintiff his special meals. Hicks Decl. ¶ 8.  If an
22  inmate told Defendant Hicks that he did not receive his special-diet meal or that his meal was
23  incorrect, her customary practice was to call the main kitchen and inform them of the inmate's
24  complaint. Kitchen staff was responsible for correcting the mistake and delivering a corrected meal
25  to the housing unit. Hicks Decl. ¶ 7.  On occasion, if the main kitchen was understaffed or busy, they
26  called the housing unit and informed the housing officers that the inmate's meal was ready to be
27  picked up.  A housing officer went to the main kitchen, picked up the inmate's special meal, and
28  distributed it to him.  Hicks Decl. ¶ 7.

1    On September 10, 2006, Defendant Hicks followed her customary practice if Plaintiff informed her that his breakfast and lunch were incorrect. Hicks Decl. ¶ 9. If there was a delay in providing Plaintiff with his special diet, Defendant Hicks would have offered him food from that served to the other inmates and that met his dietary needs. Hicks Decl. ¶ 10. Defendant Hicks did not criticize or berate Plaintiff's religion or religious beliefs; nor did she use racial epithets towards him. Hicks Decl. ¶ 11. None of Defendant Hicks's actions on September 10, 2006, were motivated by racial or religious animus towards Plaintiff. Hicks Decl. ¶ 12. Around September 19, 2006, Defendant Hicks learned that Plaintiff filed an inmate grievance (CDC 602) against her for purportedly denying him his special meals and making racial and anti-Islamic comments to him. Before that day, she had no knowledge of Plaintiff's grievance or his dissatisfaction with the meals he received on September 10, 2006. Hicks Decl. ¶ 13.

On September 12, 2006, at approximately 9 a.m., Defendant Lopez assisted with the morning release of inmates for yard in Building 6. Lopez Decl. ¶ 4. Defendant Lopez and his partner went to Plaintiff's cell to escort him and his cellmate to the yard. Lopez Decl. ¶ 5; Pl.'s Dep. 31:8-18. Defendant Lopez searched and handcuffed Plaintiff as required by ASU regulations. Defendant Lopez then ordered Plaintiff's cellmate to approach the cell door to be searched and handcuffed. Lopez Decl. ¶ 7. Defendant Lopez was searching Plaintiff's cellmate when an alarm went off on the yard, and Defendant Lopez heard over the institutional radio that several inmates were fighting and for all available staff to report to the yard. Lopez Decl. ¶ 8; Pl.'s Dep. 32:6-11; Hicks Decl. ¶ 14.

Defendant Lopez responded to the alarm and told his partner to retrieve the handcuffs from Plaintiff. Lopez Decl. ¶ 9; Pl.'s Dep. 32:15-21, 33:10-12; Hicks Decl. ¶ 15. Removing the inmates off the yard lasted about half an hour, and Defendant Lopez had to prepare a report concerning his involvement in that incident, thus he did not resume his duties in Building 6 until about two hours after he responded to the alarm. Lopez Decl. ¶ 10.

At the end of the incident, Defendant Lopez had two pairs of handcuffs, which was the required number of handcuffs he was issued. Defendant Lopez did not return to Plaintiff's cell because Defendant Lopez assumed that his partner had retrieved the handcuffs from Plaintiff and had returned them to Defendant Lopez during the yard incident. Lopez Decl. ¶ 11.

After the yard incident, Defendant Lopez continued with his duties, and he entered and exited Building 6 several times that morning and afternoon. Lopez Decl. ¶¶ 12-13. At no time did Plaintiff call to Defendant Lopez or inform him that he was still handcuffed. Lopez Decl. ¶ 13; Pl.'s Dep. 33:18-34:3, 34:17-35:6. Defendant Lopez never heard Plaintiff or his cellmate bang on their cell door or call out to other staff despite the presence of several housing officers and a control booth officer. Lopez Decl. ¶ 13; Hicks Decl. ¶¶ 16-17. At the end of Defendant Lopez's shift, he turned in his equipment, which included two pairs of handcuffs, and he left for the day. Lopez Decl. ¶ 14.

Later in the day on September 12, 2006, the housing sergeant informed Defendant Lopez that Plaintiff was still handcuffed when the work shift changed. Lopez Decl. ¶ 15. The handcuffs were taken off of Plaintiff shortly after the shift change at 2 p.m. Pl.'s Dep. 38:20-25. Although Plaintiff was originally handcuffed behind his back, he moved the handcuffs to the front of his body "after a while." Pl.'s Dep. 34:4-13.

The next day Defendant Lopez approached Plaintiff, apologized for the confusion, and asked why Plaintiff had not called out to other staff on the floor to have the handcuffs removed. But Plaintiff did not respond to Defendant Lopez's comment. Lopez Decl. ¶ 16. Defendant Lopez did not purposefully leave the handcuffs on Plaintiff. It was an inadvertent mistake as a result of a miscommunication between Defendant Lopez and his partner. Lopez Decl. ¶ 17. Defendant Lopez did not leave the handcuffs on Plaintiff in retaliation for his filing a prison grievance (CDC 602) against Defendant Hicks or any prison staff. Defendant Lopez did not know on September 12, 2006, that Plaintiff had filed a grievance against Defendant Hicks concerning the incident on September 10, 2006. Lopez Decl. ¶¶ 18-19.

**IV.     Analysis**

    **A.     Free Exercise of Religion- First Amendment**

Plaintiff alleged in his amended complaint that Defendant Hicks violated Plaintiff's First Amendment right to the free exercise of his religion by refusing to provide him with a religious meal. The right to exercise religious practices and beliefs does not terminate at the prison door. The free exercise right, however, is necessarily limited by the fact of incarceration, and may be curtailed in order to achieve legitimate correctional goals or to maintain prison security." *McElyea v. Babbitt*,

1   833 F.2d 196, 197 (9th Cir. 1987) (citing *O'Lone v. Shabazz*, 482 U.S. 342 (1987)); *see Bell v.*
2   *Wolfish*, 441 U.S. 520, 545 (1979).  Beliefs which are both sincerely held and rooted in religious
3   beliefs trigger the Free Exercise Clause if such beliefs are burdened.  *Shakur v. Schriro*, 514 F.3d
4   878, 884-85 (9th Cir. 2008) (citing *Malik v. Brown*, 16 F.3d 330, 333 (9th Cir. 1994)); *Callahan v.*
5   *Woods*, 658 F. 2d 679, 683 (9th Cir. 1981)).

6         Under this standard, "when a prison regulation impinges on inmates' constitutional rights, the
7   regulation is valid if it is reasonably related to legitimate penological interests."  *Turner v. Safley*,
8   482 U.S. 78, 89 (1987); *see O'Lone*, 482 U.S. at 349 (applying *Turner* to Free Exercise claims).
9   First, "there must be a valid, rational connection between the prison regulation and the legitimate
10  government interest put forward to justify it," and "the governmental objective must itself be a
11  legitimate and neutral one."  *Turner*, 482 U.S. at 89.  A second consideration is "whether there are
12  alternative means of exercising the right that remain open to prison inmates."  *Id.* at 90 (internal
13  quotations and citation omitted).  A third consideration is "the impact accommodation of the asserted
14  right will have on guards and other inmates, and on the allocation of prison resources generally."  *Id.*
15  "Finally, the absence of ready alternatives is evidence of the reasonableness of a prison regulation."
16  *Id.*

17        Defendant Hicks contends that she did not violate Plaintiff's free exercise of his religion
18  because she did not refuse to provide Plaintiff with a religious meal, nor did she substantially burden
19  Plaintiff's exercise of his religious beliefs.  Defs.' Mem. P. & A. 6:18-8A:15.  Based on the
20  undisputed facts, Defendants have met their burden.  The undisputed facts indicate that Defendant
21  Hicks provided Plaintiff with a regular breakfast and sack lunch.  Plaintiff could have consumed the
22  non-meat items in his bagged lunch without concern regarding cross-contamination.  Defendant
23  Hicks did not ignore Plaintiff's request for a vegetarian meal, having notified the kitchen staff of
24  Plaintiff's food complaint.  Defendant Hicks denied making any derogatory, anti-Islamic statements.

25        Construing all facts in the light most favorable to the non-moving party, the Court finds that
26  there is no genuine dispute of material fact as to Plaintiff's Free Exercise claim against Defendant
27  Hicks.  Defendant Hicks is entitled to judgment as a matter of law.
28  //

### B. Retaliation – First Amendment

Plaintiff alleged in his amended complaint that Defendant Lopez retaliated against Plaintiff for filing an inmate grievance against Defendant Hicks by leaving Plaintiff in handcuffs for several hours. Allegations of retaliation against a prisoner's First Amendment rights to speech or to petition the government may support a § 1983 claim. *Rizzo v. Dawson*, 778 F.2d 527, 532 (9th Cir. 1985); *see also Valandingham v. Bojorquez*, 866 F.2d 1135 (9th Cir. 1989); *Pratt v. Rowland*, 65 F.3d 802, 807 (9th Cir. 1995). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005); *see Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012) (citing *Rhodes* regarding elements of retaliation in prison context). At the summary judgment stage, Plaintiff is required to demonstrate that there remains a genuine dispute of material fact as to each element of the claim. *Brodheim v. Cry*, 584 F.3d 1262, 1269 n.3 (9th Cir. 2009). Pursuing civil rights litigation in court and filing inmate grievances are protected activities. *Rhodes*, 408 F.3d at 567.

Defendant Lopez contends that he did not take adverse action against Plaintiff, nor was he aware that Plaintiff had filed an inmate grievance against Defendant Hicks. Defs. Mem. P. & A. 10:8-16. Based on the undisputed facts, Defendant Lopez was not aware that Plaintiff was still in handcuffs after he went to respond to a yard alarm. Defendant Lopez was also unaware that Plaintiff had filed an inmate grievance against Defendant Hicks. Construing all facts in the light most favorable to the non-moving party, the Court finds that there is no genuine dispute of material fact as to Plaintiff's First Amendment claim against Defendant Lopez. Defendant Lopez is entitled to judgment as a matter of law.

### C. Conditions of Confinement – Eighth Amendment

Plaintiff alleged that Defendant Lopez acted with deliberate indifference to an excessive risk of serious harm to Plaintiff's health by leaving Plaintiff handcuffed for several hours. To constitute cruel and unusual punishment in violation of the Eighth Amendment, prison conditions must involve

"the wanton and unnecessary infliction of pain . . . ." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Although prison conditions may be restrictive and harsh, prison officials must provide prisoners with food, clothing, shelter, sanitation, medical care, and personal safety. *Id.*; *Toussaint v. McCarthy*, 801 F.2d 1080, 1107 (9th Cir. 1986); *Hoptowit v. Ray*, 682 F.2d 1237, 1246 (9th Cir. 1982). Where a prisoner alleges injuries stemming from unsafe conditions of confinement, prison officials may be held liable only if they acted with "deliberate indifference to a substantial risk of serious harm." *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998).

The deliberate indifference standard involves an objective and a subjective prong. First, the alleged deprivation must be, in objective terms, "sufficiently serious . . . ." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). Second, the prison official must "know[] of and disregard[] an excessive risk to inmate health or safety . . . ." *Id.* at 837. Thus, a prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of harm and disregards that risk by failing to take reasonable measures to abate it. *Id.* at 837-45. Prison officials may avoid liability by presenting evidence that they lacked knowledge of the risk, or by presenting evidence of a reasonable, albeit unsuccessful, response to the risk. *Id.* at 844-45. Mere negligence on the part of the prison official is not sufficient to establish liability, but rather, the official's conduct must have been wanton. *Id.* at 835.

Defendant Lopez contends that he did not have the requisite state of mind to violate Plaintiff's Eighth Amendment rights. Defs. Mem. P. & A. 9:11-21. Based on the undisputed facts, Defendant Lopez was unaware that Plaintiff remained handcuffed for several hours. There appears to have been miscommunication between Defendant Lopez and his partner after Defendant Lopez was interrupted by a yard alarm. Plaintiff also did not call to Defendant Lopez regarding his handcuffs after the incident was over. Construing all facts in the light most favorable to the non-moving party, the Court finds that there is no genuine dispute of material fact as to Plaintiff's Eighth Amendment claim against Defendant Lopez. Defendant Lopez is entitled to judgment as a matter of law.

///

**D.     Qualified Immunity**

Defendants also contend that they are entitled to qualified immunity. Because the Court finds that Defendants are entitled to summary judgment, it declines to address Defendants' arguments for qualified immunity.

**V.     Conclusion and Recommendation**

Based on the foregoing, it is HEREBY ORDERED that:

1. Defendants' motion for summary judgment, filed May 3, 2012, is granted in full;
2. Summary judgment is granted in favor of Defendants Hicks and Lopez and against Plaintiff for all claims; and
3. The Clerk of the Court is directed to enter judgment.

IT IS SO ORDERED.

Dated:     **November 26, 2012**              /s/ Dennis L. Beck
                                              UNITED STATES MAGISTRATE JUDGE